Newton v. LVMH Louis Vuitton at all. Mr. Rodriguez, I see you deserve three minutes for rebuttal, and you can begin whenever you're ready. Good morning, and may it please the Court. Max Rodriguez from the Law Office of Max Rodriguez on behalf of Appellant Endoah Newton. Your Honors, this case involves three key independent errors by the district court that violated precedents of this Court and well-established standards of review. First, the district court did not adhere to the appropriate standard in assessing either the complaint or the proposed first amended complaint, which were considered simultaneously. The district court did not appear to consider numerous relevant allegations, drew inferences against Ms. Newton, and made factual determinations reserved to the jury. With the ultimate result being dismissal with prejudice of a plausible set of claims. Second, the district court dismissed with prejudice, as I just mentioned, and entered judgment immediately thereafter, preventing any cure of any supposed deficiencies, even though this Court has held on multiple occasions that judgment without the opportunity to amend in these circumstances is legal error. Third, the district court denied the pre-motion-to-dismiss decision cross-motion for leave to amend, even though Ms. Newton asserted plausible claims arising from timely acts that were part of a retaliatory hostile workplace under the continuing violation doctrine, making this case factually and legally similar to this Court's prior decision in Olivieri. The district court thereby failed to apply the EFAA to Ms. Newton's election to assert those claims, and their — But the EFAA says that the statute doesn't apply to claims that arise before the effective date, right? It does, Your Honor. I think there are two independent reasons that we briefed why there would be an appropriate exception to that language here. The first of which is under the continuing violation doctrine, as this Court previously applied in Olivieri. But the acts of retaliation that occur after the effective date are — is the termination, right? No, it's — well, so, yes, there is the termination, but there's — It's Brad who's, like, you know, intervening in her matters and that kind of thing, and then also the termination. So there's a variety of categories that we briefed, and I'm happy to walk through them. Each of them has post-EFAA and timely instances that are included. So one is the intervention micromanagement, setting her up to fail in matters. The most recent of those occurred in October of 2022. And assessing the merits of the claims in Olivieri, this Court found that those were acceptable parts of a retaliatory hostile workplace claim. There's also — But I mean, if it's the same kind of conduct that's occurring before and after the relevant time bar, right? Correct. So, like, that act — a termination can't be a continuation of a different kind of adverse action, like a retaliatory hostile environment. So if you're anchoring exclusively with respect to the termination under the Title VII in the New York State Human Rights Law Analysis, that's correct. The New York City Human Rights Law Analysis is more liberal and can encompass a termination. But even so, we're not relying on the termination to anchor a timely retaliatory act because there were other retaliatory timely acts that were part of the continuation. That's the case, though. The district court noted that you yourself said in your opposition brief below that it was material different — materially different. The acts, the retaliatory hostile work environment before the passage of the act were materially different from the retaliation after, which you said was a retaliatory discharge. I understand now you're focusing on some of the other things that happened in that four-month period. But if they're materially different, then I think by definition it's not a continuing violation, right? Well, it's correct that Ms. Newton's trial counsel did include that phrasing in the briefing below. As we briefed, I think fundamentally the district court was interpreting that language in a particular way that was inconsistent with the rest of the positions asserted in the brief. The rest of the positions asserted in the brief, you know, stated a number of times that Ms. Newton was asserting a continuing violation. You could be asserting a continuing violation. I'm not saying it was waived. She was asserting a continuing violation. But in the course of the briefing on that, the lawyer says, like, they're materially different. One's about retaliatory discharge and the other's about a retaliatory work environment, hostile work environment. I don't understand why the district court's not entitled to rely on that. Well, I think the fundamental problem there, Your Honor, is that that's not what the counsel was referring to with respect to materially different, and there wasn't an opportunity because the rest of the- As a practical matter, those claims go to arbitration and the other discharge, the other adverse action claims go to the lawsuit, right? So it's not like in evaluating whether the termination was an adverse action, you need to look at the earlier evidence of social ostracism or making difficulties with her disability accommodations because the termination itself is an adverse action, right? And Pratt intervening in her matters or micromanaging it or whatever is also different than not accommodating her disability or socially ostracizing her from the office, right? So there's nothing about the earlier actions that is necessary to be considered in order to evaluate those acts of retaliation, right? So, again, if you're looking exclusively at the termination, they're potentially relevant facts. They're not necessarily part of the same pattern with a termination, but- Well, if they're not part of the same pattern, then it means that it's not a continuing violation. It might be relevant. I mean, I agree you look at all the facts when you evaluate a claim, that's fine. But the question here is whether, when the claim accrued, and if, in fact, it's a distinct act, it's a distinct adverse employment action, then it accrues when that action takes place. You don't need to, it's not part of the same adverse action. Understood, Your Honor. I think the place where I differ is that, you know, across all the multiple categories of what we identified in the briefing as continuing violation patterns of the retaliatory hostile workplace, each of them had an anchoring timely event, and each of them were similar in nature to other acts that previously occurred, you know, both post-EFAA and pre-EFAA. So that includes the intervention of micromanagement, which happened under Mr. Pratt's predecessor. So I guess another way of putting it would be, like, let's say you did get, you pursued the claim about the intervention of Pratt in the matters, and you lost. The conclusion was, for whatever reason, that did not amount to a retaliatory discriminatory act. Would that, if so facto, mean that the earlier adverse actions you would also lose? Like the social ostracism and the disability accommodation and that kind of thing? Well, so I don't think all of them rise and fall together, but I think fundamentally the thrust of what we articulate in the brief is that, you know, any one of those chains of continuing violation or all of them together were adequately pleaded and should have been allowed to proceed through the proposed first amended complaint, or for that matter, were this Court to affirm that there were certain deficiencies in the pleading, that those were the types of deficiencies that could easily be cured through a second amended complaint, but no opportunity was provided. How about the adverse actions that Pratt took? The district court seems to think that that is in, and that you're alleging that that's in response to her refusal to go to the one-on-one meeting. Right? Do you agree with that? I see I'm over my time. May I continue to answer? Sure. So I think the fundamental difference there that we have with the district court is that that particular paragraph or that instance is described. One element of it is the refusal to participate in the meeting that was proposed concerning a settlement negotiation. But the problem with the district court's analysis is that that paragraph also included a number of plausible allegations about the other qualities under which Ms. Newton was engaged in protected activity, and that because she was engaging in responding to Mr. Pratt in that context, the company was aware of it. And that includes the continuing pursuit of her claims at that time in arbitration, although she has always wished to pursue them and elected to pursue them in court. And then, in addition to that, her right to be free from this covered conduct under the EFAA in the workplace. And those allegations were included in that same paragraph, but were not included in the analysis of the district court. So you're saying it's retaliation not just for the refusal to go to the meeting, but also for other statements she's making and so on? Other statements and other conduct, including the continued pursuit of the claims that is intrinsically tied up with the fact that she's not entering into this meeting. What do you make of the district court's conclusion that there's no allegation that they knew of what she was speaking about at these conferences or about the social media posts? What's your response to that? So I think in the first instance, Your Honor, the district court didn't permit a very plausible inference that by virtue of the fact that Mr. Pratt was entering into sort of additional processes with Ms. Newton to attempt to bar her from participating in these, that there's a very plausible inference from the complaint as pleaded that they then knew that she participated in them anyway. Indeed, she was fired a few weeks after that. There's this allegation that he objected to it, but then she did it anyway. Does that mean that he asked to review it and maybe said it's not a good idea, but, like, they didn't actually bar her from doing it? Is that what I should infer from the complaint? I think that inference can fairly be drawn, especially because this isn't sort of – this isn't a type of – Okay. So if he asks for approval and then he says, well, I don't know if this is a good idea, but, like, I'm not going to stop you from doing it, then why wouldn't you then infer that they knew what she said at the conferences? I think that's exactly right. Which is exactly right? I think it's exactly right that the inference can be drawn that if you are paying enough attention to where she's speaking, that you are trying to stop her from speaking. What I'm saying, actually, it doesn't seem like they're paying that close attention. What they're saying is, I'd like you to come for approval, but they never really disapprove any of it. It's not obvious that they are paying close attention to what she's saying at the conferences. Well, to the extent that's your – to the extent that's your inclination, Your Honor, I think basically, you know, corporate knowledge of that type, especially the type that's exclusively in the possession of the defendant, can be pleaded on information and belief. And so to the extent there was a need to add some additional facts about Louis Vuitton's patterns and practices with respect to these things, and Ms. Newton would know, having been an attorney. And so you could say something like that. What is the pattern and practice that you would add to a complaint to show that they would have known all the statements she was making? Well, there were a number of things, Your Honor. So one of them is that, in fact, there were multiple employees of the company that liked or engaged with Ms. Newton's social media posts. In addition to that, there appeared to be a private investigator that was monitoring her social media posts. And on top of that, it was common practice in these situations to be tracking the activities and public statements at issue because she was a – Ms. Newton was a current counterparty at that time in an arbitration. And so there are plenty of plausible inferences that could be pleaded on information and belief to fill that gap to the extent that gap is meaningful to Your Honor. So just as a general matter, you know, if the allegations are that she made a complaint about sexual harassment and the company does an internal investigation and then does an external investigation and then is doing – you know, is defending a lawsuit, is it really plausible that after taking her complaint so seriously that they ultimately then decide to fire her for it? Like, aren't they – don't the allegations show that they're responding to the allegation of sexual harassment? No, I don't believe they do, Your Honor. I mean, I think that, you know, we walk through this in the brief and it's in the complaint. But fundamentally, at every step internally prior to the filing of the first lawsuit in state court, the company was doing everything possible to stop Ms. Newton from formally raising this as a complaint to HR and then resisted at every possible opportunity to actually commence any kind of investigation. When they then commenced the investigation, it did not, in my view, have any of the marks of taking the situation seriously or taking her allegations seriously because fundamentally the investigator made veiled but not particularly subtle threats concerning her career by virtue of the fact that she had asked for this investigation. The company made public, inflammatory comments about her after she decided to pursue her claims later and took sort of every step at every juncture to penalize her for having raised these concerns, escalated them, and then ultimately when it was clear the company was never going to take them seriously, litigating them. All right. Thank you. Thank you. You have your three minutes as well. Ms. Shaw. Thank you, Your Honor. May it please the Court, Maureen Shaw from Quinn Emanuel Urquhart & Sullivan for Appalese. And with the Court's permission, I'd like to begin by addressing the District Court's dismissal of the claims, federal retaliation claims that Ms. Newton pleaded in her operative complaint. And I would submit to the Court that the inquiry here should start with the claims that Ms. Newton actually chose to include in her operative complaint rather than, and before turning to, the proposed new claims and allegations that Ms. Newton chose not to include in her operative complaint. And the reason I say chose not to is because, as the Court may know, Ms. Newton had plenty of opportunities, ample opportunity, both before filing her initial complaint and even thereafter to amend her complaint to include these proposed new claims and allegations as of right. And she voluntarily chose not to for her own, what the District Court deemed, tactical reasons in order to subject herself to a motion for leave to amend, which comes with it, naturally, discretionary leave standard and futility review. And so we are in that realm by virtue of the choices that she has made. I wanted to focus on the District Court's determination that in the student's allegation that Defendant Pratt wanted to meet with her one-on-one to discuss settling the lawsuit was not protected, her declination to do that, whether she overtly rejected it or just ignored him, how that is not protected activity. Certainly, Your Honor. It's not protected activity for two reasons. The first is making an overture from an employment, from an employer to seek to settle an ongoing litigation if that could be the basis for a subsequent retaliation claim and would chill the public policy that is very favorable. Before we get to chilling public policy, let's take a step back. The lawsuit itself is protected activity, right? Yes. So, if a plaintiff in the course of their lawsuit suing for sexual discrimination takes certain actions in the lawsuit, doesn't take certain actions in the lawsuit, and the lawyer retaliates against her for that, how can that not be actionable? Because... Supposing you called her into her office and said, Ms. Newton, I asked you to sit down with me to discuss the settlement. This has been hanging over the company's head for a long time. I was trying to resolve it. You won't even meet with me. You're fired. Would that be actionable or not? I don't know whether that would be actionable, Your Honor, and we don't dispute that it may be, but that's not...  How could that not be actionable that she's being fired because she's refusing to settle a discrimination case? An employee doesn't have protection for that? Because protected activity is activity where an employee is protesting acts made illegal under Title VII.  And so I don't know... Could it be reasonably understood by an employer that if a plaintiff doesn't want to meet with them that they're continuing to oppose what they believe is discrimination at the company? Isn't that a reasonable... We have to draw all reasonable inferences in her favor that he understood that is that she's going to continue this lawsuit and they want it to end so they're going to fire her. We can talk about whether it's plausible or not, but I'm just having a hard time understanding how that could be unprotected by our retaliation laws. I think that would be highly problematic. I think... Let me address Your Honor's question more directly then because apart from the hypothetical about whether it could or could not be protected activity in certain circumstances, in this case, based on her own allegations, she has pleaded that it is not. And she pleaded in her complaint that the reason that she refused to take the meeting with Mr. Pratt was because she viewed it as potentially being unfair and subject to an imbalance in power to take that meeting. Those were her own allegations. I don't see that. I'm looking at page 285. She said she was scared and appalled that her new boss was pressuring her one-on-one without her attorneys present to settle the sexual harassment retaliation claims. She continued to assert her rights. I don't see her saying that for some other reason other than because she's continuing to impose what she alleged was discrimination. I will find a site for Your Honor when I can, but I believe it's contained in our briefing. Well, regardless of whether what she subjectively believed were the reasons why she didn't do it, wouldn't the employee who's refusing to take the meeting have to at least explain that they're refusing to take the meeting out of opposition to sexual harassment? So if she said, I don't want to take the meeting because I think the company is engaging in a sham investigation and you're just going to pressure me to settle the lawsuit, that might be an act of opposition. But if she says, I'm not going to take a meeting because, you know, I don't like you or I don't know, some other independent reason or, you know, I think I might get a bigger settlement if I keep litigating, it might not be. That's exactly right, Your Honor, and it goes to the element of knowledge, right? As part of a retaliation claim, you need to show both protected activity and the employer's knowledge that it was protected activity. In her favor. So why isn't a reasonable inference if someone's refusing to engage in settlement discussions that they want to pursue their claim as discrimination? Why would an employer, it doesn't matter what her subjective reasons are, it's what would be reasonably understood by the employer, right? Isn't that the test? I can read it. The test is what the, what could be understood or could reasonably understood in connection with what the plaintiff is doing. So when a plaintiff says I'm not settling and I don't want to meet with you to settle this case, even if they don't give any reason, why couldn't an employer understand that she is continuing to pursue her lawsuit? Because there are many reasons why she might choose not to meet with her new supervisor to discuss settlement and choose to pursue what her settlement in a different way. I don't think, respectfully,  that is a plausible inference and here she has not vetoed it.   that we find that that's protected activity. I mean, they also assert other activity in terms of speaking at conferences. That's not the only one. To me, that was the clearest one. But why wouldn't it be  that if within four months of that protected activity the super, the general counsel who asks for the meeting and she doesn't respond or rejects it, fires her in,  four months, right? Yes or no? Yes, that's correct, Your Honor. That there is more of a temporal proximity there. That's pretty close. That's pretty close, right? Four months is pretty close. Four months is not actually pretty close under the standards of the cases that we have cited. And there wasn't silence in between. She alleges that there were other things. Maybe there wouldn't be separately enough to rise to the level of retaliation claim, but as Judge Manasci said, we can look at the totality, right? And the  is after that refusal to meet with him, he said, I want to approve anything that you speak about,  You have to get approval. That is correct,  That had never been done at the company before, right? I don't know that that's correct, Your Honor. Well, based on the  nobody ever told her she spoke in  I think she has alleged that she had not been subject to that requirement before. She alleges that he started inserting herself in her client communications, excluding her from communications with clients, so there are other things besides what is a pretty close temporal proximity that he was not happy with her. Well, I would have two answers for you.   proximity is a factor, but even under the cases that find that  proximity can be a proxy for causation in the absence of other direct evidence of causation of which here there is none. Those cases find that the temporal proximity can be a proxy      direct evidence of causation. You can be other circumstantial evidence of causation. That's what she's pointing to. Well, she is not pointing to other circumstantial evidence of causation. She is pointing to other circumstantial evidence of     among the outer limits of circumstances where courts will find that temporal proximity itself can be used to have an inference of causation.  refused the meeting and then he's kind of hostile to her in the conduct of the  There is the suggested settlement meeting where she says after that his conduct changed. The conduct that she alleges changed after that includes refusing to give her permission to speak on panels, requiring permission to speak on  and then not a protected activity. I know we've had discussion about that. Number two, there's no plausible allegation that Mr. Pratt, who is the actor she is identifying here, had knowledge of  activity. And this is not simply knowledge that she intended to speak on a panel.    of the meeting is protected activity, then you might understand the wanting permission to speak on conferences as not necessarily even responding to what she says there but just trying to make her life difficult and then you fire her within four months so if the protected activity is just a one-on-one meeting then you have hostility and termination within a short period. So that's a different kind of thing.  then you think maybe asking for you know saying that the employer should know if she's going to do public speaking or whatever is not even an adverse employment action so   go to assessing the motive whether it's retaliatory or not right? I want to go back to something you said isn't it a reasonable inference that if she's being asked to speak at a women and influence and power conference and the panel is about how women successfully passed the most bipartisan transformative law ending the  of sexual misconduct that is protected activity wouldn't the company if she's asking for approval suggested the company had no idea what it was about how can you get approval for something if you don't know what it's about?  suggesting that the company had no   topic was to be about but they didn't know what her statements would be at it and so we shouldn't draw a reasonable inference that they understood she was going to say something against discrimination at that conference I think there is a higher standard of knowledge when you want to impute knowledge to an  who therefore is said to have retaliated as a  of the so she makes a complaint of harassment the company investigates it internally and then also externally they conclude that it didn't happen right she thinks that that was a sham and so continues to make public statements that Louis Vuitton is discriminatory and whatever I guess I would think that at some point the employer is entitled to  the employee to  their resolution of a complaint but at the I think with apologies for using the phrase it depends on what the it is I don't think having asserted a claim lawsuit registered disagreement with the results of  investigation and then sitting passively while continuing to pursue that ongoing protected the law requires concrete and discreet I do think if she was making statements that the employer knew about that did oppose practices rendered illegal those could constitute separate instances of protected activity that's not what's  here and I think so you're not disputing that her statements at the conferences would be are protected activity there aren't sufficient allegations that the this is not something like it's good to have public policies that make it harder for discrimination to occur in the workplace I don't know that that's protected activity your honor I don't know that that's protected activity advocacy of a public policy as opposed to an actual discrimination in the workplace so is that what it is so if it's kind of advocacy for legislation or something that's not a  activity but if it is opposition to what the employer is doing to the  it's protected activity I think those are two the employer if she says I go into that you're fired we have to see her remarks to know whether or not discrimination by being at a conference I think you do your honor in an extreme example she could have gotten up on that panel and said something about what she ate for lunch that day and sat down I realize that's absurd she spoke to congress nobody knew what she was going to talk about what side she was going to take on the issues it does exemplify why you can't draw that large of an inferential gap I would like to point out this is not a litigant for whom she has not had many chances to explain in detail what she is alleged she has several paragraphs about how she was terminated the day of termination isn't that something we can also consider she goes through some paragraphs where she was humiliated on the day she was terminated isn't that something we  as well I think it is something you can consider but her problem still is that she cannot connect her termination which happened at the beginning of 2023 to so you would agree at least the allegations suggest there was an effort to humiliate her I would not agree there was an effort I would agree you could infer that from the allegations why would they instruct her to  within one hour it is not in the complaint it was ostensibly because of restructuring or downsizing there was no allegation misconduct or anything like that why would she be instructed even though her termination date was a month away to leave immediately give up her badge people are  down the minutes as she is leaving there are other things in there as well it seems like a pretty unusual situation for restructuring she certainly alleges it that way your honor I can think of many reasons why it is typical practice for employers to escort employees out of a building right after they are terminated even if the effective date is not until a month later that happens routinely I understand your honor's point that she does allege it that way I still don't think that is sufficient because she cannot connect the termination which is the adverse employment action to a protected activity that comes close enough in time to present an inference that it was caused remember this is a new supervisor who has even by her own account and her own complaint acted reasonably pleasant to her for many years   think the termination which is the primary adverse employment action that she identifies as a retaliatory action is not temporarily connected I'm sorry I couldn't hear the beginning of your question that is one but I think there are  yes what is the other intervening change the quality of the retaliation changes before firestone is replaced by Pratt the types of retaliatory activity that she alleges fall more within the environment of  hostile work environment ostracization interfering in her matters attempts to  her that is the quality of the retaliation she alleges under firestone who she alleges was the primary actor after Pratt changed  correct the change differentiates  purposes of the  title 7 that is against the employer itself in principle it could be there is leadership of the company in overall course of  so it is not necessarily meaningful that the employer    orchestrating it what is the reason why when we are talking about a claim against the  overall the change in the direct supervisor matter I think it is all of those things your you look at among other things whether they are sufficiently related to each other in that circumstance changes in supervisor changes in department can make a difference temporal proximity or discontinuity can make a difference the quality of the retaliation can make a  whether you can assess this to be a continuing pattern of conduct or something different and here it was something different on many accounts by her own allegations thank you your honor thank you I would like to cover a couple of issues with respect to causation I think as some of the questions we're getting at the causation that's  here is temporal proximity I would urge this court to look at its prior decision in the bank's  which held that eight months or more in the temporal proximity analysis can be sufficient so even in a  where we were limited to evaluating what we can colloquially call the proposed settlement meeting there were other matters at issue in that paragraph it is true that your client didn't explain why she isn't taking the meeting right that's correct don't you think for it to be an act in opposition to discrimination she has to say something like I don't want to meet with you because I think you're not dealing with my claims in good faith  are pursuing them and there's an invitation and overture for a  discussion I don't think you can disentangle a plaintiff's decision about how they're going to engage with that proposed settlement meeting she's still working at the company and they have to figure out a way to live together so maybe he's trying in good faith to come up with a way to live together so if she thinks I hate everybody here and doesn't want to take the meeting that's one thing if she thinks it's trying to convince me to  up with a way to live together I don't         they're going     proposed settlement meeting she's still working    so maybe he's trying to convince me to up with a way to live  so maybe he's   convince me to up with a way    I don't think he's trying   me to up with a way to live together I don't think  trying to convince me to up with      don't    to up with a way to live                don't    to  me to up with a way     don't  he's trying to   up with a way to live together  don't think he's     up with a way to live  I just submit that it's not sort of an issue that the court needs to reach in this case, because none of those circumstances are present here. Right. Thank you both. Thank you. We appreciate the arguments. We'll reserve the decision. Have a good day.